**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NATIONAL LIABILITY & FIRE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Judge Nora Barry Fischer |
| | ) | Civil Action No. 24-453 |
| BRIMAR TRANSIT, INC., PITTSBURGH PUBLIC SCHOOL DISTRICT, | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

I.    INTRODUCTION

In this case, Plaintiff National Liability & Fire Insurance Company ("National") brings claims for breach of contract and unjust enrichment against Defendants Brimar Transit, Inc. ("Brimar") and the Pittsburgh Public School District, (the "District") seeking to recover $338,146.86 in defense costs it paid to the District and a $150,000 settlement payment[1] it made to the M.M. Plaintiffs to resolve the underlying action styled *M.M., parent and natural guardian of K.M., a minor v. Pittsburgh Public School District and Brimar Transit, Inc.*, Case No. GD-18-003257, ("Allegheny County Action"), in the Court of Common Pleas of Allegheny County. (Docket No. 160). The Clerk of Court has entered default against Brimar given its failure to answer or otherwise respond to the Complaint,[2] (Docket No. 27), and only the claims against the District are at issue in this Memorandum Opinion.

---

[1]    On April 4, 2025, the Court denied National's motion seeking leave of court to file certain exhibits under seal including the Settlement Agreement and other documents referencing the amount of the settlement because information pertaining to the settlement was publicly available as it was cited in the Third Circuit's opinion and referenced in prior briefs and pleadings in this case as well as the action at Civ. A. No. 18-1129. (Docket No. 54). The District is also subject to Right to Know Law such that the settlement was approved publicly by the District's Board of Directors. (Docket No. 54). The Court's Order is incorporated herein.

[2]    The Court notes that to date, no motion for default judgment has been filed.

1

Presently before the Court are cross-motions for summary judgment filed by National and the District which have been fully briefed in accordance with Local Rule 56. (Docket Nos. 44-51; 57-58; 60-62; 65-66; 69-70). After careful consideration of the parties' positions and for the following reasons, the motions will be granted, in part, and denied, in part. Specifically, the Court finds that there are no genuine disputes of material fact and National is entitled to contractual reimbursement of the defense costs it paid to the District and will enter summary judgment in its favor on the breach of contract count. The Court also holds that there are no genuine disputes of material fact and that the District is entitled to summary judgment on National's unjust enrichment claim.

II.     BACKGROUND

The Court focuses on those facts necessary to resolve the pending motions for summary judgment because many of the facts pertaining to the insurance coverage dispute and the Allegheny County Action were set forth in the prior opinions by this Court and the U.S. Court of Appeals for the Third Circuit. (*See e.g.,* Docket No. 47-46).

A.     *Relationship of Parties and Relevant Provisions in Commercial Auto Policy*

The District and Brimar are parties to a contract pursuant to which Brimar agreed to provide student transportation services for the District during several school years. (*See* Docket No. 47-1). The relevant terms and conditions of the contract state that Brimar agreed "to indemnify, defend and hold harmless" the District "against any and all loss, damage, cost and expenses which the [District] may hereafter suffer or incur arising from [Brimar's] obligations under this Agreement." (*Id*. at ¶ 8). In addition, Brimar was required to maintain up to $1,000,000 in insurance coverage for its vehicles and to name the District as an additional insured. (*Id*. at ¶¶ 17-19; 2.f). It is undisputed that Brimar procured a Commercial Business

Auto Policy from National ("Policy") effective from January 11, 2016 to January 11, 2017 but did not have the District named as an additional insured on this particular Policy. (Docket No. 47-2).

The relevant terms and conditions of the Policy include the following.

## BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we" and "us" and "our" refer to the company providing this insurance.

…

## SECTION II-LIABILITY COVERAGE

**A.      Coverage**
We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

…

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

…

## PENNSYLVANIA CHANGES – DEFENSE COSTS

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART

…

3

A. The provisions of Paragraph B. are added to all Insuring Agreements that set forth a duty to defend under:

…

1. Section II – Liability Coverage in Paragraph A. Coverage under the Business Auto …

B. If we initially defend an insured ("insured") or pay for an insured's ("insured's") defense but later determine that none of the claims ("claims"), for which we provided a defense or defense costs, are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred.

The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense or the payment of defense costs and to seek reimbursement for defense costs.

(Docket No. 47-2 at 18-19, 44).

B.    *Incident on School Bus and Claims Asserted Against Brimar and the District*

On April 29, 2016, there was an incident on a school bus operated by Brimar involving two special needs students of the District which resulted in injuries to a minor student, K.M. (Docket Nos. 60 at ¶ 11; 67 at ¶ 11).  The episode was investigated by the City of Pittsburgh Bureau of Police without any charges being filed but the injured child's mother, M.M., retained Fred Jug, Esq. to pursue any civil claims related to the matter.  (Docket No. 64 at ¶ 20). Attorney Jug sent correspondence to Brimar outlining potential claims against it and Brimar's personal counsel Lebovitz & Lebovitz ("Lebovitz law firm") formally tendered the claims to National on February 10, 2017.  (Docket No. 47-4).  Over the next several weeks, National advised Brimar, through the Lebovitz law firm, that it was investigating the matter under a reservation of rights and had assigned an independent adjuster from Champion Claims Service. (Docket No. 64 at ¶¶ 22-24).   On May 31, 2017, Kathleen McAllister, Esq. of DiBella, Geer, McAllister, & Best ("DiBella law firm") told Brimar's personal counsel at the Lebovitz law firm

that she had been asked by National to handle any claims regarding the matter "to the extent that it goes to suit." (Docket No. 47-8). The District became aware of the potential claim around this time and engaged its current counsel Jamie Doherty, Esq. of Goehring Rutter and Boehm ("GRB law firm") to defend the matter. (Docket No. 60 at ¶¶ 19-23; 67 at ¶¶ 19-23). The District did not have general liability insurance to provide coverage for the claim. (*Id*. at ¶ 24).

In separate correspondence dated September 20, 2017 and September 21, 2017, Attorney Jug made a pre-complaint demand of $500,000 to settle any claims against the District. (Docket No. 47-9). Attorney Jug also informed both the District and Brimar that his clients were willing to participate in mediation. (Docket Nos. 47-9; 47-10). Additional correspondence from around this time indicates that the claims adjuster and Brimar were continuing to investigate the matter, including any potential claims against the District. (Docket No. 64 at ¶¶ 31-33). Attorney Jug reiterated to Brimar in letters dated October 10, 2017 and December 13, 2017 that he was prepared to negotiate a resolution of the claim or proceed to mediation and that he would be filing a Writ of Summons in the Court of Common Pleas for the purpose of obtaining a docket number for any settlement. (Docket No. 64 at ¶¶ 34-35).

On December 19, 2017, Attorney Doherty sent correspondence to Brimar's personal counsel at the Lebovitz law firm wherein the District tendered the claim to Brimar, asked it to provide a defense and indemnity to the District, and reminded Brimar of its contractual duties to maintain at least $1,000,000 in insurance coverage and to assure that the District was to be a named insured on any policy. (Docket No. 64 at ¶¶ 37-38). Later, on January 8, 2018, Attorney Lebovitz sent correspondence to Attorney McAllister which included as attachments the earlier letters from Attorney Jug as well as the December 19, 2017 tender letter from the District's counsel. (Docket No. 47-48). Attorney Lebovitz further commented that he had discussed the

matter with David Kern, President, Champion Claims Service, who advised that Attorney Jug had never submitted the extent of the alleged injuries suffered by his minor client nor provided a sensible demand with sufficient support such that Champion Claims Service had closed its file. (*Id*.).  A few weeks later, on January 26, 2018, Attorney Jason H. Peck of the DiBella law firm sent a letter to Attorney Doherty advising that National retained his office to represent Brimar regarding the claim and requested that he forward a copy of the Policy to the District, which was included along with the letter.  (Docket No. 56-1).  Attorney Peck added that "National has asked me to advise you of its position that the School District's tender of its defense in this matter is premature given that no litigation has been filed.  If and when litigation is filed, National will give appropriate consideration to the School District's tender."  (*Id*.).

   C. *Litigation in Allegheny County and Federal Court*

   The M.M. Plaintiffs commenced the Allegheny County Action by filing a Writ of Summons in the Court of Common Pleas on March 7, 2018. (Docket Nos. 64 at ¶ 48; 47-20).  In response, insurance defense counsel from DiBella law firm entered an appearance on behalf of Brimar, filed a Praecipe for Rule to File Complaint and served it on the M.M. Plaintiffs.  (Docket No. 64 at ¶¶ 49-50).  The District asked that the rule be withdrawn so that they could proceed to mediation prior to the Complaint being filed as counsel believed it was in the best interests of the parties to resolve the case before the allegations were reported publicly.  (Docket No. 47-20).  Despite this request, the parties did not participate in pre-suit mediation and the M.M. Plaintiffs filed their initial complaint on May 31, 2018.  (Docket No. 64 at ¶ 54).

   National provided a defense to Brimar for the claims asserted against it in the Allegheny County Action under a reservation of rights[3] and counsel from the DiBella law firm continued to

---

[3] The Court notes that National's July 24, 2018 reservation of rights letter directed to Brimar stated that "the Policy does not apply to the allegations of, and damages sought in the Lawsuit [and that] [National] will provide

represent Brimar.    (Docket Nos. 47-22; 64 at ¶¶ 58-59).  Meanwhile, the District continued to retain the GRB law firm to represent it in the Allegheny County Action.  (Docket No. 64 at ¶¶ 58-59).  The District raised immunity defenses to the M.M. Plaintiffs' claims and also filed crossclaims against Brimar seeking indemnity pursuant to their contract.    (Docket No. 47-49 at 70).

On August 24, 2018, National filed the federal declaratory judgment action against Brimar in this Court.  (Docket No. 64 at ¶¶ 60-62; *see also* Civ. A. No. 18-1129).  National was represented by its coverage counsel from the law firm of Cozen O'Connor; Brimar was represented by its personal counsel, the Lebovitz law firm; and the District was represented by GRB law firm.  (*Id*.).  (The District was permitted to intervene in the coverage case).  On January 3, 2019, National issued a denial letter which sets forth its positions that the District did not qualify as an insured under the Policy and that the claims asserted in the Allegheny County Action were not covered.  (Docket No. 47-25).  There is no reference to the Defense Costs endorsement in this letter and National does not state that it is reserving the right to seek reimbursement of any defense costs.  (*Id*.).  This letter is addressed to Pittsburgh Public School District at 341 S. Bellefield Avenue in Pittsburgh c/o Alin McIver, Esq. and notes that a copy was provided by email to Attorney Doherty at GRB law firm.  (*Id*.).

In its Second Amended Complaint, National brought claims against Brimar and the District that it did not owe them a duty to defend or a duty to indemnify in the Allegheny County Action.  (Civ. A. No. 18-1129, Docket No. 46 at Counts I, III).  National also brought a breach of

---

[Brimar] with a defense against the Lawsuit subject to a full and complete reservation of rights under the Policy and applicable law" but further states that National reserved the right to withdraw from the defense if it determined that the Policy does not apply to the lawsuit, to file a declaratory judgment action against Brimar, and "to seek reimbursement of any defense fees, defense costs, or any other sums expended or incurred by National Liability while defending the lawsuit or causes of action alleged in the Lawsuit to which the Policy does not or could not potentially apply." (Docket No. 47-22).  This letter is addressed to Brimar at 712 Rebecca Ave. in Pittsburgh and notes that copies were provided by email to Attorneys Lebovitz, Peck and McAllister as well as Britta O. Konopka, CPCU of General Star Indemnity Company.  (*Id*.).

contract claim against Brimar seeking reimbursement of defense costs. (Civ. A. No. 18-1129, Docket No. 46 at Count II).

The Allegheny County Action proceeded through discovery and an order was entered on January 7, 2020 setting the case for trial on May 12, 2020. (Docket No. 51-21). Discovery similarly commenced in the federal coverage case but was stayed while the parties briefed and argued a contested motion for judgment on the pleadings. (*See* Civ. A. No. 18-1129). In a Memorandum Opinion dated January 14, 2020, the Court found that the District qualified as an additional insured under the Policy and that National had a duty to defend both Brimar and the District in the Allegheny County Action. (Civ. A. No. 18-1129, Docket No. 91). The Court further held that a determination as to the duty to indemnify was premature given the procedural postures of the two matters. (*Id*.). The Court then lifted the stay and discovery re-commenced in the coverage case. (*Id*.).

National drafted a letter to the District dated February 14, 2020 wherein it conditionally agreed to fund the District's defense and pay defense costs under a reservation of rights but the letter was misaddressed and allegedly not received by the District at that time. (Docket No. 51-10). On March 18, 2020, all civil trials were stayed in the Court of Common Pleas of Allegheny County due to the COVID-19 pandemic. (Docket No. 47-28). Over the next few days, counsel discussed the willingness of their respective clients to mediate the matter in email correspondence and the M.M. Plaintiffs reduced their demand to $450,000 in order to facilitate the negotiations. (Docket No. 47-29). A pre-trial conciliation conference was scheduled on April 27, 2020 before the Hon. Arnold Klein in the Court of Common Pleas. (Docket No. 47-30). In advance of the conciliation, the District's counsel engaged in correspondence with counsel for National and Brimar wherein she advised that the District did not intend to contribute financially

8

to a settlement given its outstanding claim for defense costs in excess of $200,000. (Docket Nos.

47-31; 47-32; 47-33). It appears that email messages between the District's counsel and

National's coverage counsel led to the revelation that the District had not received the February

14, 2020 letter and resulted in the District forwarding a Bill and Payment Report to support its

claim for defense costs and National sending a new version of the reservation of rights letter

dated April 28, 2020. (*Id.*). The District admits that it received this version, which states, in

pertinent part:

> Subject to the reservations of rights set forth herein and
> conditioned upon School District's written confirmation that no
> other insurance is applicable to the Lawsuit, National Liability is
> agreeable to fund the reasonable and necessary defense costs of
> Pittsburgh Public School District incurred in defending itself from
> the Lawsuit ("the defense"), subject to an agreement as to
> reasonable hourly rates, under [the Policy] …
>
> National reserves the right to deny coverage and withdraw the
> defense should it be determined that the Policy affords no coverage
> for the Lawsuit. Please note that any further action by National
> Liability does not constitute and shall not be considered a waiver
> of National Liability's rights or an admission of any obligations
> under the Policy, nor shall National Liability be estopped from
> raising any of its coverage defenses.
>                                    …
>
> By defending this lawsuit (pursuant and subject to this reservation
> of rights), National Liability does not admit that the Policy applies
> to the Lawsuit or imposes any related obligations on National
> Liability such as an obligation to indemnify any entity. National
> Liability reserves the right to seek reimbursement of any fees,
> costs or other sums it expends or incurs defending the Suit, to the
> extent the Policy does not apply.
>
>                                    …
>
> The Policy states that insofar as National Liability provides a
> defense for an insured and it is later determined the Policy does not
> apply, National Liability has the right to reimbursement of defense
> costs incurred in providing the defense. National Liability
> expressly reserves the right to seek recoupment of any defense

> costs it incurs in connection with providing a defense of School
> District should the policy be determined not to apply to the
> Lawsuit.

(Docket No. 61-16). Over the next few months, National sought invoices and checks from the

District through both formal discovery and written correspondence in the coverage case but the

parties did not resolve their disputes regarding what constituted reasonable and necessary

defense costs. (Docket Nos. 61-17; 61-18). Accordingly, National did not pay the District's

defense costs at that time and the District continued to be represented by GRB law firm in the

Allegheny County Action. As the Court recalls, fact discovery closed in the coverage case on

October 28, 2020, the trial of the Allegheny County Action was continued beyond that date, and

the parties agreed to participate in a global mediation. (Civ. A. No. 18-1129, Docket No. 97).

### D.    Negotiations and Settlement of Allegheny County Action

On November 6, 2020, Mark Shepard, Esq. conducted a global mediation by

videoconference with National, the M.M. Plaintiffs, Brimar and the District concerning both the

Allegheny County Action and the federal coverage case. (Docket Nos. 47-39; 64 at ¶ 109). The

participants included National's coverage counsel, Attorney Richard Mason from Cozen

O'Connor, Attorney Jug for the M.M. Plaintiffs, Attorney Doherty and Solicitor Ira Weiss for the

District, and Brimar was dually represented by insurance defense counsel from the DiBella law

firm and its personal counsel from the Lebovitz law firm. (Docket No. 47-39). During the

mediation, National made an offer of $150,000 to the M.M. Plaintiffs to resolve the Allegheny

County Action. (Docket No. 47-40). The offer was left open for further consideration by the

M.M. Plaintiffs over the next few weeks. (Id). The District was not asked to contribute funding

for the settlement and Solicitor Weiss testified that he was made aware of the amount but did not

object because the District was "okay" with the proposed settlement.  (Docket No. 64 at ¶ 112; Ex. 19 at 65-67).

As part of the efforts to resolve the coverage case, the District submitted a series of cancelled checks supporting its claim for defense costs to the mediator but the parties remained at an impasse and were unable to settle the coverage case.  (Docket No. 61-19).  However, on November 24, 2020, Mr. Shepard reported that the M.M. Plaintiffs accepted National's offer to settle the Allegheny County Action for $150,000.  (Docket No. 47-41).  Since a minor's claims were involved, the M.M. Plaintiffs proceeded to Orphan's Court and received approval of the settlement on the same day.  (Docket No. 47-42).  Counsel for the M.M. Plaintiffs indicated that the settlement funds needed to be deposited into a trust account within 30 days and encouraged counsel to circulate a draft release and finalize the terms of the settlement in writing.  (*Id.*).

The attorneys for the parties then moved on to negotiate the terms of the settlement and the correspondence between counsel from around that time demonstrates that National's counsel initiated most of the drafting.  To that end, he circulated a draft Memorandum of Understanding of Settlement marked "Without Prejudice / For discussion purposes only" at some point prior to the acceptance of the offer which was redlined by the other attorneys, with the M.M. Plaintiffs refusing a structured settlement provision and the District rejecting certain language in the Reservation of Rights section.  (Docket Nos. 47-41; 47-42; 47-43).  Of note, counsel for the District struck language stating that "National reserves the right to pursue recoupment from Brimar and School District for all amounts National pays, will pay, or has paid in connection with the [Allegheny County Action], including the defense thereof, [and] amounts paid or payable pursuant to this Agreement."  (Docket No. 47-43 at 5).

11

On December 2, 2020, National's counsel sent correspondence noting that since there were multiple disagreements with the draft Memorandum of Understanding, he believed it was more pragmatic to move directly to discussion of the terms of the settlement agreement and circulated a draft of a "Confidential Settlement Agreement and Release" marked "*CO Draft (12/02/20) / Without Prejudice.*"  (Docket No. 47-43 at 7-13).  He pointed out in the email to the District's counsel that "we feel that a party should be free to include a reservation of rights that does not contradict the purpose of the settlement agreement, and so in this draft we have included wording that School District wished to see stricken from the MOU.  However, we will consider School District's reasons for striking that language if you will provide that to us."  (*Id.* at 7).  As promised, § V of the version circulated by National's counsel contained the following: "National reserves the right to pursue recoupment from Brimar and School District for all amounts National pays, will pay, or has paid in connection with the Underlying Action, including the defense thereof, including amounts paid or payable pursuant to this Agreement." (*Id.* at 11).

Two days after circulating the initial draft of the Settlement Agreement and Release, on December 4, 2020, National's counsel separately sent additional correspondence to the attorneys for Brimar and the District which states the following:

> I write with regard to the action pending in Allegheny County, captioned M.M., parent and natural guardian of K.M., a Minor v. School District of Pittsburgh, Pa. and Brimar Transit, Inc., No. GD18-003257 (the "Allegheny County Action"). This letter confirms that, if National makes any settlement payment to the plaintiffs in the Allegheny County Action, National will seek full reimbursement to the extent of that payment from Brimar Transit, Inc. and School District of Pittsburgh. Because the Commercial Policy issued by National to Brimar was not intended to cover the claims in the Allegheny County Action and, National believes, ultimately will be declared not to cover those claims, National will be entitled to reimbursement from Brimar and School

> District of amounts it pays on their behalves (sic) to resolve the Allegheny County Action.
>
> Any settlement payment by National that resolves the Allegheny County Action also will extinguish any duty of National to indemnify any Insured concerning that Action.

(Docket No. 47-43 at 15-17). The record does not contain any responses from Brimar or the District addressing this correspondence.

However, the negotiations on the Settlement Agreement and Release continued. On December 10, 2020, the District's counsel sent correspondence to the other attorneys and included a redlined version of the Settlement Agreement and Release. (Docket No. 55-3). Most relevant here, the District struck the proposed language in the Reservation of Rights section that "National reserves the right to pursue recoupment from Brimar and School District for all amounts National pays, will pay, or has paid in connection with the Underlying Action, including the defense thereof, including amounts paid or payable pursuant to this Agreement." (*Id*. at 6-7). Counsel for the District did not specifically comment on the reasoning for deleting this language from the draft in this email but noted other issues of concern at the time which are not relevant here. (*Id*. at 2).

Later correspondence dated December 17 and 18, 2020 indicates that additional changes were made by the M.M. Plaintiffs and Brimar but the recoupment language was not reinserted into the agreement. (Docket No. 47-44). National's counsel stated in a December 17, 2020 email that a clean version which was circulated by the M.M. Plaintiffs was acceptable to National and that it could issue payment by December 23, 2020 if they had a fully executed Settlement Agreement by Monday, December 22, 2020. (Docket No. 47-44 at 3-4). He added that "[a]s previously noted, National has reserved the right to seek restitution or recoupment with regard to any payments pursuant to this settlement." (*Id*.). The next morning, National's counsel

reached back out and informed counsel for Brimar and the District that he needed a prompt response as the M.M. Plaintiffs had threatened to file a motion if they did not receive approval of the revised agreement by the end of the day. (*Id*. at 3). Aside from some minor edits by counsel for Brimar, the parties concluded their negotiations, and all parties executed the agreement through their respective representatives.

The final version of the Confidential Settlement Agreement and Release between the M.M. Plaintiffs, National, Brimar and the District, indicates that they are collectively referred to as the "Parties" throughout and contains the following relevant terms and conditions.

WHEREAS, Plaintiffs commenced an action in the Court of Common Pleas …, and;

WHEREAS, Brimar and School District have made demand upon National to resolve on their behalves (sic) the Allegheny County Action by settlement, and;

WHEREAS, all Parties dispute the allegations asserted against them by any other Party;

WHEREAS, the Parties, without prejudice to their respective positions, wish to settle and terminate the Allegheny County Action.

NOW THEREFORE, in consideration of the mutual promises and covenants contained herein, and for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereto agree as follows:

## I. Payment by National

In consideration of the releases and other promises to it set forth herein, National agrees to pay the single and total sum of $150,000 (hereinafter the "National Payment") to counsel for plaintiffs on or before December 23, 2020 contingent upon delivery of the signed Agreement by Plaintiffs and Plaintiff's counsel […]

## II. Releases

14

Plaintiffs […] hereby release, remise, and forever discharge Brimar, School District and National, and any of their predecessors, successors, assigns, parent corporations, subsidiaries, affiliates, and the officers, directors, employees, agents, members, and representatives of any of them from any and all duties, liabilities, responsibilities, or obligations for, related to, or with respect to the Allegheny County Action, including, but not limited to, any and all claims that were or could have been raised in the Allegheny County Action.

Plaintiffs further agree to defend, indemnify and hold harmless Brimar and School District, and any of their predecessors, successors, assigns, parent corporations, subsidiaries, affiliates, and the officers, directors, employees, agents, members, and representatives of any of them, from and against any and all damages, losses, liabilities, obligations, fines, penalties, claims, assessments, litigation, demands, defenses, judgments, suits, proceedings, costs, disbursements or expenses (including, without limitation, attorneys' and experts' reasonable fees and disbursements) of any kind or of any nature whatsoever …   This indemnification provision does not apply to and specifically excludes the coverage action described herein and which is reserved in Paragraph V below.

Brimar, including its parents, affiliates, and subsidiaries, hereby releases, remises and forever discharges School District, and any of its predecessors, successors, assigns, parent corporations, subsidiaries, affiliates, and agents, and the officers, directors, employees, agents, members, and representatives of any of them from any and all duties, liabilities, responsibilities, or obligations for, related to, or with respect to the Allegheny County Action, including, but not limited to, any and all claims that were or could have been raised in the Allegheny County Action, excepting those claims raised by Brimar against the School District in the federal coverage action …

School District, including its parents, affiliates, and subsidiaries, hereby releases, remises and forever discharges Brimar, and any of its predecessors, successors, assigns, parent corporations, subsidiaries, affiliates, and agents, and the officers, directors, employees, agents, members, and representatives of any of them from any and all duties, liabilities, responsibilities, or obligations for, related to, or with respect to the Allegheny County Action, including, but not limited to, any and all claims that were or could have been raised in the Allegheny County Action,

excepting those claims raised by School District against Brimar in the federal coverage action …

### III. Dismissal of Allegheny Action

Within ten days after the delivery of the above-referenced payment by National as provided in paragraph 1 hereinabove, the Parties shall take all necessary steps to cause the dismissal with prejudice of the Allegheny County Action in its entirety, including all cross-claims therein.  Plaintiffs agree to cause the docket marked settled, ended and discontinued with prejudice as to their claims.  Since there are Cross Claims, the remaining Defendants will need to cooperate in signing the documents necessary to settle, end and discontinue the Cross Claims.  As such, no delay on the part of any of the Defendants should be attributed to the Plaintiffs or their counsel.

…

### V. Reservation of Rights

Brimar, School District, and National each otherwise reserve all their rights with regard to the Coverage Action, 2:18-cv-01129-NBF, National Liability & Fire Insurance Company v. Brimar Transit, Inc. v. Pittsburgh Public School District, Intervenor, none of which is waived or released pursuant to this Agreement.  This Agreement is not intended to waive, admit, or compromise any claims, positions, or defenses asserted or which may be asserted in the Coverage Action.

### VI.  No Admissions

The parties acknowledge that this Agreement is a compromise settlement, and neither the fact of the settlement nor this Agreement shall constitute any admission or acknowledgement by any party concerning the existence or extent of insurance coverage, liability, or fault in any respect.

…

### IX.  Complete Agreement

The Parties expressly agree that this Agreement constitutes their complete and entire agreement with respect to the subject matter hereof, and that any other promises, inducements, representations, warranties, or agreements with respect to the

subject matter hereof have been superseded hereby and are not intended to survive this Agreement.    No amendment or modification of this Agreement shall be effective unless set forth in writing and signed by a duly authorized officer of each Party.

…

## XI.  Governing Law

The Parties agree that all matters relative to the construction and interpretation of this Agreement shall be construed and interpreted in accordance with the laws of the Commonwealth of Pennsylvania and jurisdiction of any dispute arising out of this Agreement shall be with the Court of Common Pleas of Allegheny County, Pennsylvania.

(Docket No. 55-5 at 2-8).

It is uncontested that the parties completed their respective obligations under the Settlement Agreement and Release.  In this regard, National made the required payment to the M.M. Plaintiffs; the M.M. Plaintiffs dismissed their claims against Brimar and the District; and all crossclaims between the District and Brimar were likewise dismissed.  (Docket Nos. 64 at ¶¶ 118; 60 at ¶ 85; 67 at ¶ 85; 61-21).  The Allegheny County Action was then settled, discontinued, and closed.  (Docket No. 61-21).  Hence, the Allegheny County Action ended before National and the District resolved their disputes about the outstanding defense costs.  As such, National did not pay the claimed defense costs when the underlying action was dismissed.

E.    *National's Defense Payments to the District and Relevant Procedure in Federal Coverage Action*

The federal coverage litigation continued and the parties provided the Court with a series of status reports in Civil A. No. 18-1129 indicating that they were unable to resolve the case and could not agree on the next steps of the litigation.  (Civ. A. No. 18-1129, Docket Nos. 102; 104; 106; 108; 112; 118; 120).  It is undisputed that in February of 2021 National proceeded to send an initial payment of $266,800.86 to the District for its defense costs along with a reservation of

rights letter and then moved to amend its complaint to add claims seeking reimbursement for the settlement payment and the defense costs against both Brimar and the District. (Docket No. 61-8). The February 10, 2021 letter from National's counsel to the District's counsel states the following, in relevant part:

> On January 14, 2020, the Court in the above-referenced matter issued a Memorandum Opinion holding that National Liability & Fire Insurance Company ("National") has a duty to defend the Pittsburgh Public School District ("School District") in *M.M., parent and natural guardian of K.M., a Minor v. School District of Pittsburgh, Pa. and Brimar Transit, Inc.*, No. GD18-003257 (the "Allegheny County Action"). As you are aware, National respectfully disagrees with the Court's Memorandum Opinion. Notwithstanding that disagreement and subject to all of National's rights and appellate remedies to contest the Court's ruling, enclosed herein is a check issued to the School District in the amount of $266,800.86.
>
> …
>
> As National informed you previously, including at the time it contributed monies to resolve the Allegheny County Action, the National policy does not apply and any amounts National expends, including the payment enclosed herein, are on a full recourse basis. *See, e.g.* December 4, 2020 Letter from Richard Mason, Esq attached hereto. Therefore, this payment is being made solely to comply with the Court's Memorandum Opinion and in no way waives any of National's claims or coverage defenses asserted in the pending Federal court action, or any future claims or defenses to be asserted by National in that action. In making this payment, National continues to reserve all rights with respect to coverage for the Allegheny County Action, including, without limitation, its legal and equitable rights to seek reimbursement of this payment, and the payment issued by National on behalf of the School District and Brimar Transit, Inc. to settle the Allegheny County Action. National also continues to reserve all of its rights to contest the Court's Memorandum Opinion and any future orders issued by the Court, including all appellate remedies. Further, National reserves its right to contest the reasonableness and necessity of the School District's claimed defense costs. Of particular note, in light of the School District's heavily redacted invoices, National is unable to discern whether any particular task and related fee was reasonable or necessary. Now that the Allegheny County Action has resolved, please provide unredacted copies of all defense invoices.

> Neither this letter nor any future communication, investigation, or action by National is intended, or should be deemed or construed, as an admission that the National Policy issued to Brimar Transit, Inc. applies to the Allegheny County Action. This letter should not be viewed as a waiver of any right or defense available to National, now or in the future, or an expansion of any duties National may have or may in the future acknowledge.

(Docket No. 61-8).  A few months later, on July 9, 2021, National's counsel sent the District's counsel an additional check of $71,346.00 and another reservation of rights letter, stating the following:

> We are in receipt of your February 26, 2021 correspondence providing supplemental defense cost documentation related to M.M., parent and natural guardian of K.M., a Minor v. School District of Pittsburgh, Pa. and Brimar Transit, Inc., No. GD18-003257 (the "Allegheny County Action"). As you are aware, National Liability & Fire Insurance Company ("National") respectfully disagrees with the Court's January 14, 2020 Memorandum Opinion which found that National had a duty to defend the Pittsburgh Public School District ("School District") in the Allegheny County Action. Notwithstanding that disagreement and subject to all of National's rights and appellate remedies to contest the Court's ruling, enclosed herein is a check issued to the School District in the amount of $ 71,346.

> …

> As National informed you previously, including at the time it contributed monies to resolve the Allegheny County Action, the National policy does not apply and any amounts National expends, including the payment enclosed herein, are on a full recourse basis. See, e.g. December 4, 2020 Letter from Richard Mason, Esq attached hereto. Therefore, this payment is being made solely to comply with the Court's Memorandum Opinion and in no way waives any of National's claims or coverage defenses asserted in the pending Federal court action, or any future claims or defenses to be asserted by National in that action. In making this payment, National continues to reserve all rights with respect to coverage for the Allegheny County Action, including, without limitation, its legal and equitable rights to seek reimbursement of this payment, and the payment issued by National on behalf of the School District and Brimar Transit, Inc. to settle the Allegheny County

19

Action. National also continues to reserve all of its rights to contest
the Court's Memorandum Opinion and any future orders issued by
the Court, including all appellate remedies. Further, National
reserves its right to contest the reasonableness and necessity of the
School District's claimed defense costs. As previously advised in
our correspondence of February 10, 2021, in light of the School
District's heavily redacted invoices, National is unable to discern
whether any particular task and related fee was reasonable or
necessary. Now that the Allegheny County Action has resolved,
please provide unredacted copies of all defense invoices.

Neither this letter nor any future communication,
investigation, or action by National is intended, or should be
deemed or construed, as an admission that the National Policy
issued to Brimar Transit, Inc. applies to the Allegheny County
Action. This letter should not be viewed as a waiver of any right or
defense available to National, now or in the future, or an expansion
of any duties National may have or may in the future acknowledge.

(Docket No. 61-9). It is uncontested that National paid the District a total amount of

$338,146.86 ($266,800.86 plus $71,346.00) for its defense costs in the Allegheny County

Action.

The coverage case continued with the parties litigating a number of issues. Among other

things, the Court denied National's motion seeking leave to amend its complaint as it was

untimely and later denied its summary judgment motion, finding that National had both a duty to

defend and a duty to indemnify Brimar and the District. (*See* Civ. A. No. 18-1129, Docket Nos.

128-129; 164-166). National appealed this Court's rulings and the U.S. Court of Appeals for the

Third Circuit determined that the pleadings in the underlying case "did not forge a strong enough

link between the use of the school bus and K.M.'s injuries" such that National did not have a

duty to defend under the Policy and reversed the decisions on the duty to defend and duty to

indemnify. (Docket No. 55-4 at 2). The Court of Appeals further added that it did not need to

address the other challenges raised by National, including the determination that the District was

an additional insured under the Policy, because that issue was moot for purposes of the appeal.

*See id.* at n.3. Finally, the Court of Appeals declined to "opine on the additional question of National's entitlement to be reimbursed for the defense costs it advanced to Brimar and the District, as well as the settlement it funded with the plaintiffs [in the Allegheny County Action]" and stated that this Court was "better positioned on remand to address these issues." *Id*. at n.4.

      F.    *Relevant Procedural History of Reimbursement Action*

      Following remand, the parties were referred to a judicial settlement conference but were once again unable to resolve the matter. (*See* Civ. A. No. 18-1129, Docket Nos. 175-176; 179). The prior coverage case at Civil A. No. 18-1129 was closed after judgment was entered in favor of National as to Counts I and III of its Second Amended Complaint alleging that it did not have a duty to defend or a duty to indemnify Brimar and the District in the Allegheny County Action under the Policy. (Civ. A. No. 18-1129, Docket Nos. 192-193). National's remaining claim for breach of contract against Brimar at Count II seeking reimbursement of defense costs was dismissed, without prejudice, in favor of the instant case where National brings breach of contract and unjust enrichment claims against both Brimar and the District. (*Id*.). Brimar has defaulted in this action as its owner passed away, the business is no longer a going concern, and its former counsel was not being paid for services rendered. (*Id*.; Docket No. 27). Accordingly, the Court focuses on National's claims at Counts III and IV of its Complaint against the District. (Docket No. 1 at Counts III, IV).

      After completing discovery, National and the District filed their respective motions for summary judgment, supporting briefs, concise statements of material facts and appendices on April 3, 2025.[4] (Docket Nos. 44-51). They later submitted their opposing briefs and responsive

---

[4]      As noted above, National failed to demonstrate that certain exhibits should be sealed and the Court directed National to file certain exhibits separately, with appropriate redactions for the name of the involved minor and other personal identifiers. (*See* Docket No. 55).

concise statement of material facts on May 1, 2025.[5]  (Docket Nos. 57-58; 60-62).  Their respective replies were submitted on May 15, 2025, (Docket Nos. 65-66), and their sur-replies followed on May 29, 2025, (Docket Nos. 69, 70).  As such, the Court considers the competing summary judgment motions to be fully briefed and ripe for disposition.

## III.    LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a).  "'This standard does not change when the issue is presented in the context of cross-motions for summary judgment.'" *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016) (quoting *Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987)). "When both parties move for summary judgment, '[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.'" *Id.*  (quoting 10A Charles Alan Wright et al., Federal Practice & Procedure § 2720 (3d ed. 2016)).

"A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019) (citations omitted). Further, "[a] dispute is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Clews v. County of Schuylkill*, 12 F.4th 353, 358 (3d Cir. 2021) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

---

[5]      Both parties tendered concise statements of additional material facts which are nearly identical to their initial concise statements of material facts submitted with their motions for summary judgment. (*Compare* Docket Nos. 46 to 59 and Docket Nos. 50 to 60).  The parties likewise filed nearly identical responses to the additional concise statements. (*Compare* Docket Nos. 58 to 67 and Docket Nos. 64 to 68).

A party seeking summary judgment "must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof." *Conboy v. U.S. Small Bus. Admin.*, 992 F.3d 153, 160 (3d Cir. 2021) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings." *Conboy*, 992 F.3d at 160; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In this regard, the non-movant must come forward with more than "some metaphysical doubt as to the material facts." *Conboy*, 992 F.3d at 160; *see also Matsushita*, 475 U.S. at 586-87.

When a party with the burden of proof at trial moves for summary judgment, the standard for obtaining summary judgment is more stringent. *Walker v. Pennsylvania Dep't of Lab. & Indus.*, Civ. A. No. 19-41, 2020 WL 2475663, at *2 (W.D. Pa. May 13, 2020) (citing *Nat'l State Bank v. Fed. Reserve Bank of New York*, 979 F.2d 1579, 1582 (3d Cir. 1992)). To that end, the party with the trial burden "must show that it has produced enough evidence to support the findings of fact necessary to win" at trial and that "a reasonable juror would be compelled to find its way on the facts needed to rule in its favor on the law." *El v. Southeastern Pennsylvania Trans. Authority (SEPTA)*, 479 F.3d 232, 238 (3d Cir. 2007) (citations omitted).

> After all, the burden of proof includes the obligation to persuade the factfinder that one's propositions of fact are indeed true. Black's Law Dictionary 190 (7th ed.1999). Thus, if there is a chance that a reasonable factfinder would not accept a moving party's necessary propositions of fact, pre-trial judgment cannot be granted. Specious objections will not, of course, defeat a motion for summary judgment, but real questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof, will.

*Id.*

In order to determine whether a genuine issue of material fact exists, the Court's analysis begins by a review of the parties' filings to determine the realm of potentially disputed facts. As such, all summary judgment filings must comply with Federal Rule of Civil Procedure 56, as well as this Court's companion Local Rule 56. Both rules "allow facts to be deemed admitted where they are not properly opposed." *See Kelly v. DeJoy*, No. 19-204, 2021 WL 914207, at *4 (W.D. Pa. Mar. 10, 2021) (Hardy, J.); FED. R. CIV. P. 56(e) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: ... consider the fact undisputed for purposes of the motion."); LCvR 56(E) ("[M]aterial facts set forth in the moving party's Concise Statement of Material Facts ... which are claimed to be undisputed, will for the purposes of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party.").

IV.    DISCUSSION

National seeks reimbursement of the $338,146.86 in defense costs paid to the District under alternative theories of breach of contract and unjust enrichment and the $150,000 settlement payment it paid to the M.M. Plaintiffs under an unjust enrichment theory. (Docket Nos. 49; 62; 65; 69). The District has refused to reimburse National for the defense costs and the settlement payment maintaining that National has failed to demonstrate that it breached the contract or was unjustly enriched. (Docket Nos. 45; 57; 66; 70). The parties do not contest that Pennsylvania law governs their disputes in this action. The Court starts its analysis with the breach of contract claim.

A.  *Breach of Contract – Payments of Defense Costs in February and July 2021*

"It is well-established that three elements are necessary to [prove] a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages." *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. L. Firm of Malone Middleman, P.C.*, 635 Pa. 427, 445, 137 A.3d 1247, 1258 (Pa. 2016) (citing *J.F. Walker Co., Inc. v. Excalibur Oil Grp., Inc.*, 792 A.2d 1269, 1272 (Pa. Super. Ct. 2002)). The parties do not dispute that the Policy is a valid and enforceable contract but debate the proper interpretation of the relevant terms and whether the District's continuing refusal to repay the defense costs constitutes a breach of same.  (Docket Nos. 45; 49; 57; 62; 65-66; 69-70). Since an insurance policy is at issue, the Court is mindful of the following principles governing Pennsylvania insurance law.

> In interpreting the relevant provisions of the insurance policies […], we are guided by the polestar principle that insurance policies are contracts between an insurer and a policyholder. *Gallagher v. GEICO Indemnity Company*, 650 Pa. 600, 201 A.3d. 131, 137 (2013). Thus, we apply traditional principles of contract interpretation in ascertaining the meaning of the terms used therein. *Id.* This requires our Court to effectuate the intent of the contracting parties as reflected by the written language of the insurance policies. *American and Foreign Insurance Company v. Jerry's Sport Center*, 606 Pa. 584, 2 A.3d 526, 540 (2010). In this regard, the language of the policy must be considered in its entirety. *Pennsylvania National Mutual Casualty Insurance v. St. John*, 630 Pa. 1, 106 A.3d 1, 14 (2014).

> If policy terms are clear and unambiguous, then we will give those terms their plain and ordinary meaning, unless they violate a clearly established public policy. *AAA Mid-Atlantic Insurance Company v. Ryan*, 624 Pa. 93, 84 A.3d 626, 633-34 (2014). Conversely, when a provision of a policy is ambiguous, the policy provision is to be construed in favor of the policyholder and against the insurer, as the insurer drafted the policy and selected the language which was used therein. *Prudential Property & Casualty Insurance Company v. Sartno*, 588 Pa. 205, 903 A.2d 1170, 1177 (2006). Policy terms are ambiguous "if they are subject

to more than one reasonable interpretation when applied to a particular set of facts." *Madison Construction Company v. Harleysville Mutual Insurance Company*, 557 Pa. 595, 735 A.2d 100, 106 (1999).

*Kurach v. Truck Ins. Exch.*, 661 Pa. 176, 192–93, 235 A.3d 1106, 1116 (2020). "Courts will not, however, 'distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 141 (3d Cir. 2023) (quoting *Madison Constr. Co.*, 735 A.2d at 106). "And if possible, 'a court should interpret the policy so as to avoid ambiguities and give effect to all of its provisions.'" *Id.* (quoting *Am. Auto. Ins. Co. Auto. v. Murray*, 658 F.3d 311, 321 (3d Cir. 2011)). In addition, as to defense costs specifically, the Supreme Court of Pennsylvania has held that "an insurer is not entitled to be reimbursed for defense costs absent an express provision in the written insurance contract." *Jerry's Sport*, 606 Pa. at 589; *see also CAMICO Mut. Ins. Co. v. Heffler, Radetich & Saitta, L.L.P.*, 587 F. App'x 726, 731 (3d Cir. Oct. 10, 2014) (same).

The language of the disputed reimbursement provision set forth in an endorsement to the Policy is the following:

> If we initially defend an insured or pay for an insured's defense but later determine that none of the claims, for which we provided a defense or defense costs, are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred.
>
> The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense or the payment of defense costs and to seek reimbursement for defense costs.

(Docket No. 47-2 at 44) (internal parentheticals and identifiers omitted). It is uncontested that "we" refers to National and that both Brimar and the District are considered "insureds."[6] Since

---

[6]    The Court notes that National is seeking contractual reimbursement under the Defense Costs endorsement arguing that it paid defense costs to the District as an insured under the Policy and has therefore not carried forward

National provided a defense to Brimar in the Allegheny County Action, the first clause before the disjunctive "or" stating "[i]f we initially defend an insured …" would apply to determine if National had a right to reimbursement from Brimar.  As National paid defense costs to the District to fund its defense of the Allegheny County Action, it invokes the second clause "[i]f we … pay for an insured's defense" to demonstrate a right to reimbursement here.  (Docket Nos. 49; 62; 65; 69).

Several courts have analyzed identical policy language in the first scenario where the insurer provides a defense to its insured and have applied the provision in a straightforward manner, i.e., if the insurer initially provides a defense and a Court later determines that there is no coverage, the insurer has a right to reimbursement.  *See e.g., Zurich Am. Ins. Co. v. Century Steel Erectors Co., L.P.*, 613 F. Supp. 3d 896, 908 (W.D. Pa. 2020) ("In this case, the ZAIC Policy explicitly provides for a right to reimbursement of defense costs if it is determined that coverage is not available under the Policy. As there is no coverage under its Policy, ZAIC is entitled to recover the costs it has expended to defend Century Steel in the Underlying Action."); *Associated Indus. Ins. Co., Inc. v. 101 W. Lehigh, LLC*, No. 23-CV-03736, 2024 WL 1585924, at *4 (E.D. Pa. Apr. 11, 2024) (permitting reimbursement under an identical provision); *Nat'l Liab. & Fire Ins. Co. v. Sidelines Tree Serv., LLC*, No. 2:22-CV-01283-CBB, 2024 WL 5186484, at *9 (W.D. Pa. Dec. 20, 2024), *appeal dismissed*, No. 25-1021, 2025 WL 1864771 (3d Cir. May 2, 2025).  These Courts have further reasoned that the second sentence of the reimbursement provision operates as a limitation of the insurer's right to reimbursement because it limits the insurer's recovery to those defense costs the insurer has incurred after the date that it sent a reservation of rights letter to its insured specifically reserving the right to seek reimbursement of

---

its prior argument in Civ. A. No. 18-1129 that the District does not qualify as insured.  The Court considers this argument to be waived.  *See Harbor Bus. Compliance Corp. v. Firstbase.io, Inc.*, 152 F.4th 516, 529 (3d Cir. 2025) (internal quotation omitted) ("Waiver is the 'intentional relinquishment or abandonment of a known right.").

defense costs.  *See id.*  Although those cases discussing the first clause of the provision are not directly on point, they are helpful to the Court's interpretation of the policy language in light of the parties' arguments presented as to the second clause.  *Id.*

To that end, the District maintains that the term "initially" is undefined in the Policy and that the Merriam-Webster's dictionary definition of same should be applied, i.e., "at the beginning: at first" to qualify both clauses including "defend an insured" and "pay for an insured's defense."   (Docket No. 45 at 8 (quoting Merriam-Webster)).  The District continues that "under Pennsylvania law, the insurance carrier is required to provide a coverage position and either deny coverage or provide a defense with a reservation of rights at or within a reasonable time after commencement of suit or tender of claim."   (*Id.* at 8 (citing *Erie Ins. Exch. v. Lobenthal*, 114 A.3d 832, 840 (Pa. Super. Ct. 2015) and *Jerry's Sport*, 2 A.3d at 542)).  The District adds that "[g]iven this context, the only reasonable interpretation of the phrase '[i]f we initially defend an insured or pay for insured's defense' is that the carrier provides a defense or begins paying for a defense contemporaneously with, or within a reasonably short period of time after, the claim is tendered i.e. at the beginning."  (Docket No. 45 at 9).  All told, the District believes that National's purported delays in not paying the defense costs until nearly two years after its original tender of the claims defeat its invocation of the reimbursement provision.  (*See* Docket Nos. 45; 57; 66; 70).

National counters that "[t]he only reasonable and proper construction of the provision is that the adverb 'initially' solely modifies the verb that immediately follows, i.e. 'defend.' 'Initially' does not modify the subsequent verb 'pay' or verb phrase 'pay for an insured's defense costs' that follows the disjunctive 'or.' Notably, to adopt the District's construction would render the term 'or pay' superfluous because initially defending an insured necessarily includes initially

paying costs associated with that defense." (Docket No. 49 at 11). Following the Policy language, National suggests that it is entitled to reimbursement because it initially paid for the District's defense of the Allegheny County Action following this Court's ruling that it had a duty to defend but later determined that it did not have a duty to defend the District when the Third Circuit subsequently reversed this Court's decision. (Docket Nos. 49; 62; 65; 69). National also issued a series of reservation of rights letters to the District dated February 14, 2020, April 28, 2020, February 10, 2021 and July 9, 2021, all of which specifically stated that it would seek reimbursement of defense costs and were sent either before or contemporaneously with the payment of the defense costs. (*Id.*).

In this Court's estimation, the reimbursement provision is unambiguous and the plain language meaning of the first sentence simply utilizes the adverbs "initially" and "later" in the separate clauses to describe the sequencing of events necessary for the insurer to establish a right to reimbursement. The dictionary definitions of those terms include that "initially" means "at the beginning: at first" and "later" means "at some time subsequent to a different time." *See* Initially, Merriam-Webster Dictionary (2025); *see also* Later, Merriam-Webster Dictionary (2025). It also appears to the Court that the same interpretation controls if the word "initially" qualifies the disjunctive phrases "defend an insured" or "pay for an insured's defense," as the District suggests, or only qualifies the phrase "defend an insured" that immediately follows it, as National has argued, because the second clause is qualified with "later" which makes clear that the determination that there is no coverage for the claims is the second event in the sequence. Stated differently, the first sentence of the reimbursement provision simply means that National has a right to reimbursement from the District if:

- at first, National paid defense costs to the District; and,

29

- at some time subsequent to National paying the defense costs, it was determined that it did not have a duty to defend the District.

The second sentence of the reimbursement provision sets forth a limitation on the right to reimbursement of defense costs incurred by the insurer tied to the date that a reservation of rights letter is sent by the insurer to the insured, i.e., the date on which National sent a reservation of rights letter to the District invoking the reimbursement provision. Taken together, the contractual language effectively sets up a two-step process to determine the insurer's right to reimbursement of defense costs requiring the Court to determine the dates when: the defense costs were paid to the insured; the determination was made that there was no coverage; and the reservation of rights letter invoking the reimbursement provision was sent to the insured.

Based on this analysis, the Court believes that the District's proffered interpretation of the reimbursement provision is unreasonable as it stretches the meaning of "initially … pay for an insured's defense" to include the timing of the insured's tender of its defense to the insurer which is not mentioned in the Policy language and otherwise adds a purported requirement into the Policy that the insurer's payment of defense costs must be made at or near the time of the insured's tender of its defense. *See Wilson*, 57 F. 4th at 141. Again, the Court must read the relevant Policy language as a whole and the separate clauses of the endorsement should be read together harmoniously in an effort to avoid unnecessary ambiguities. *See id.* Further, the second sentence makes clear that the relevant limitation is that reimbursement cannot be obtained for defense costs incurred by the insurer before it sent the insured a reservation of rights letter invoking the reimbursement provision. Therefore, the parties' disputes about when and how the District tendered the claim to National, and the alleged delays by National in issuing the initial disclaimer letter and in paying the defense costs are not material to the interpretation of the reimbursement provision. *See Baloga*, 927 F.3d at 752.

With respect to the first step, the undisputed facts demonstrate that National paid the District's defense costs via checks that it sent the District on February 10, 2021 and July 9, 2021 and the Third Circuit determined that it did not have a duty to defend the District under the Policy in its Opinion issued on September 22, 2023.  (*See* Docket Nos. 55-4; 61-8; 61-9). National has thus established that it has the right to reimbursement of defense costs under the first sentence of the challenged provision because the payments were made before the Third Circuit's decision.  As to the second step, National incurred the defense costs when it made the payments to the District on February 10, 2021 and July 9, 2021.  Although the parties dispute whether the District received the February 14, 2020 reservation of rights letter given that it was misaddressed, it is uncontested that the District received the April 28, 2020, February 10, 2021 and July 9, 2021 reservation of rights letters, all of which plainly advise the District that National would seek reimbursement of any defense costs paid under the reimbursement provision and were sent before or contemporaneously with the payments.  (Docket Nos. 47-35; 61-8; 61-9). Given same, the Court finds as a matter of law that National is entitled to reimbursement of the $338,146.86 in defense costs and that the District has breached the contract by its continuing refusal to repay the funds to National.  *See Meyer, Darragh*, 635 Pa. at 445.

For all of these reasons, the Court resolves the parties' cross-motions for summary judgment on the breach of contract claim in National's favor.  As National is entitled to the defense costs paid to the District under the Policy, its motion for summary judgment alternatively seeking recovery of the defense costs based on unjust enrichment is denied, as moot.  Yet, the Court's reasoning continues as National also seeks to recover the settlement payment claiming unjust enrichment by the District.

B. *Unjust Enrichment – Settlement Payment in December of 2020*

National concedes that the Policy does not contain any provisions regarding reimbursement of settlement payments but argues that all of the elements of unjust enrichment have been satisfied as it paid the settlement to the M.M. Plaintiffs on behalf of the District and Brimar; the District benefited from the settlement payment as the claims against it in the Allegheny County Action were dismissed; and that it would allegedly be inequitable for the District to retain the benefit now that the Third Circuit has held that National did not have a duty to defend or indemnify the District. (Docket Nos. 49; 62; 65; 69). National claims that it reserved the right to pursue the reimbursement of the settlement payment through the reservation of rights letters it sent to the District and points to the language in the Settlement Agreement in support of its position that the District has been unjustly enriched. (*Id.*). National relies on several non-binding cases to buttress its argument that reimbursement of the settlement payment is available under Pennsylvania law. (*Id.*).

The District counters that National's unjust enrichment claim seeking recovery of the settlement payment is insufficient under Pennsylvania law because the parties' relationship is set forth in enforceable contracts and any right to reimbursement for the settlement payment is not included among the terms and conditions. (Docket Nos. 45; 57; 66; 70). The District further contends that the Pennsylvania Supreme Court held in *Jerry's Sport* that an insurance company is unable to unilaterally reserve a right that modifies the parties' contractual agreement. (*Id.*). The District continues that it would not be inequitable for it to retain any benefit from the settlement payment to the M.M. Plaintiffs because all parties to the Settlement Agreement, including National, benefited from the settlement and dismissal of the Allegheny County Action, i.e., no more defense costs would be incurred and there was no longer any risk of a large verdict

against the insureds.  (*Id*.).  The District was also disadvantaged because it dismissed crossclaims seeking indemnification against Brimar and had raised an immunity defense to the M.M. Plaintiffs' claims which was mooted by the settlement.  (*Id*.).

Having carefully considered the parties' positions, it is this Court's opinion that there are no genuine disputes of material fact and that the District is entitled to summary judgment on National's unjust enrichment claim for several reasons.  To that end, National's claim is precluded under Pennsylvania law because the settlement payment to the M.M. Plaintiffs is the subject of two separate enforceable contracts, i.e., the Policy and Settlement Agreement.  The Court further finds that National has failed to present sufficient evidence to sustain its unjust enrichment claim as the settlement of the Allegheny County Action protected the interests of all parties, including National.  Finally, the decisions upon which National relies are all distinguishable given the unique facts and circumstances of this case and the underlying action.

To succeed on an equitable claim of unjust enrichment under Pennsylvania law, the party seeking recovery must establish the following elements:

> (1) [the] benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. The application of the doctrine depends on the particular factual circumstances of the case at issue. In determining if the doctrine applies, our focus is not on the intention of the parties, but rather on whether the defendant has been unjustly enriched.

*Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. L. Firm of Malone Middleman, P.C.*, 645 Pa. 362, 378, 179 A.3d 1093, 1102 (2018) (quoting *Shafer Elec. & Const. v. Mantia*, 626 Pa. 258, 96 A.3d 989, 993 (2014)).  However, "the absence of an enforceable contract at law is the seed from which an unjust enrichment claim in equity sprouts." *Wilson v. Parker*, 227 A.3d 343, 353 (Pa. Super. Ct. 2020).  Indeed, "the Pennsylvania Supreme Court has left no doubt that

'unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract, regardless of how harsh the provisions of such contracts may seem in the light of subsequent happenings.'" *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 228-29 (3d Cir. 2022) (quoting *Wilson Area Sch. Dist. v. Skepton*, 586 Pa. 513, 895 A.2d 1250, 1254 (2006)) (further quotation omitted).  "Similarly, the Pennsylvania Supreme Court has rejected a claim of unjust enrichment when a benefit that a party confers upon another also protects its own interest."  *SodexoMAGIC, LLC*, 24 F.4th at 229 (citing *Jerry's Sport*, 2 A.3d at 546).

At the time of the global mediation in this matter, National was defending Brimar under a reservation of rights in the Allegheny County Action, and while the District had retained its own counsel, the GRB law firm and paid for its own defense of that case, National had conditionally offered to pay the District's defense costs under a separate reservation of rights.  (*See* Docket Nos. 47-39; 61-16).  Although this Court had held that National had a duty to defend Brimar and the District under the Policy, it noted that it was premature to determine if National had a duty to indemnify them.  (Civ. A. No. 18-1129, Docket Nos. 91-92).  National also continued to contest coverage such that the instant coverage case and the underlying personal injury action remained in a period of uncertainty where the parties understood that the M.M. Plaintiffs' claims were potentially covered by the Policy but also knew that there would be additional litigation of their coverage disputes.  National reached an oral agreement to settle the Allegheny County Action with the M.M. Plaintiffs at the mediation, sent reservation of rights letters to its insureds and then the parties collectively negotiated a Settlement Agreement which ultimately led to the settlement payment made to the M.M. Plaintiffs and the dismissal of the Allegheny County Action.  (*See* Docket Nos. 47-40; 47-41; 47-42; 47-43; 55-3; 55-5; 61-19).  Unlike the reimbursement

provision as to defense costs described in the prior section of this Memorandum Opinion, neither the Policy nor the Settlement Agreement contain any language providing National with an express contractual right to reimbursement of settlement payments if the claims were later determined to not be covered by the Policy.  *See* § IV.A., *supra*.  As National is attempting to pursue reimbursement under an unjust enrichment theory, further examination of both agreements and applicable principles of Pennsylvania insurance law is necessary.  *See SodexoMAGIC, LLC*, 24 F.4th at 228-29.

Turning to the terms of the Policy, § II.A. references National's right to settle claims on behalf of its insureds, wherein it states that "[w]e may investigate and settle any claim or 'suit' as we consider appropriate.  Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements."  (Docket No. 47-2 at 19).  Pennsylvania courts have held that such broad language grants the insurer considerable discretion and authorizes it to settle a claim on behalf of its insured, even if the insured does not consent and the lawsuit against the insured is groundless.  *See Step Plan Servs., Inc. v. Koresko*, 12 A.3d 401, 419 (Pa. Super. Ct. 2010) ("In meeting its contractual obligations, an insurer can generally settle the claim on the insured's behalf, even without the insured's consent, if the policy so provides.").

An insurer has a duty to act in good faith toward its insured in making settlement decisions but is unlikely to be found liable for bad faith if it settles a claim against its insured within policy limits.  *See Healthfleet Ambulance, Inc. v. Markel Ins. Co.*, Civ. A. No. 20-2250, 2020 WL 4201618, at *3 (E.D. Pa. July 22, 2020) (citing *Step Plan Servs.*, 12 A.3d at 419) ("Pennsylvania law disfavors bad faith claims where a policy grants the insurer discretion to settle and where such settlement is within policy limits.").  Pennsylvania courts have also held

that an insurer may settle a third party's claim against an insured and reserve the right to disclaim or contest coverage by filing a declaratory judgment action and/or issuing a reservation of rights letter. *See Step Plan Servs.,* 12 A.3d at 419 (citing *Regis Ins. Co. v. All American Rathskeller, Inc.*, 976 A.2d 1157 (Pa. Super. Ct. 2009)) ("Where the insurer assumes the duty to defend, the insurer can simultaneously challenge whether the claim is covered under the insurance policy, even if the underlying case settles."). An insured has a duty to cooperate with the insurer under Pennsylvania law and "does not have the option of 'rejecting' an insurer's defense as it would constitute a breach of the insurance policy, thereby releasing the insurer from the obligation to provide coverage." *Babcock & Wilcox Co. v. Am. Nuclear Insurers*, 635 Pa. 1, 11, 131 A.3d 445, 451 (Pa. 2015) (citing *Jerry's Sport*, 2 A.3d at 545 ("[W]here the claim was potentially covered, Insured would have been at risk of breaching the insurance contract if it had rejected [the insurer's] defense and it was later determined that the claim was covered.")).

In light of these principles, National had broad discretion under the Policy and did not need the District's consent to settle the M.M. Plaintiffs' claims for an amount that was within policy limits, as was the case here. *See Step Plan Servs.*, 12 A.3d at 419. On the other hand, the District risked breaching the Policy if it refused to cooperate with National or objected to the settlement of those claims. *See Babcock & Wilcox*, 635 Pa. at 11. Yet, the Policy is silent as to the potential reimbursement of any settlement payments made by the insurer if the claims were later determined to be not covered. (*See* Docket No. 47-2).

Absent an express contractual right to reimbursement in the Policy, National relies heavily on the reservation of rights letter that it sent to the District on December 4, 2020 in support of its unjust enrichment claim. (Docket No. 47-43 at 15-17). In pertinent part, the letter states that:

> if National makes any settlement payment to the plaintiffs in the Allegheny County Action, National will seek full reimbursement to the extent of that payment from Brimar Transit, Inc. and School District of Pittsburgh. Because the Commercial Policy issued by National to Brimar was not intended to cover the claims in the Allegheny County Action and, National believes, ultimately will be declared not to cover those claims, National will be entitled to reimbursement from Brimar and School District of amounts it pays on their behalves (sic) to resolve the Allegheny County Action.

(*Id.*).  As to the timing of this letter, it was sent after the M.M. Plaintiffs had accepted National's offer to settle the Allegheny County Action for $150,000 and during the parties' negotiations of the terms and conditions of the settlement.  (*See* Docket Nos. 47-41; 47-43; 47-44; 55-5).

It appears to the Court that Pennsylvania law is clear that the reservation of rights letter did not become part of the agreements between the parties because an insurer cannot unilaterally amend the policy with its insured through a reservation of rights letter.  (*See* Docket No. 47-43 at 15-17).  The Pennsylvania Supreme Court has recognized that "[a] reservation of rights letter asserts defenses and exclusions that are already set forth in the policy" such that an insurer "cannot employ a reservation of rights letter to reserve a right it does not have pursuant to the contract."  *Jerry's Sport*, 606 Pa. at 614.  Since an insurer cannot unilaterally amend the insurance contract via its issuance of a reservation of rights letter, the terms set forth in National's December 4, 2020 letter did not become part of the Policy.[7]  *Id.* at 614-15 ("We are persuaded that permitting reimbursement by reservation of rights, absent an insurance policy provision authorizing the right in the first place, is tantamount to allowing the insurer to extract a unilateral amendment to the insurance contract.").

Secondly, the Settlement Agreement contains an integration clause which bars incorporation of National's reservation of rights into same.  (*See* Docket No. 55-5).  With respect

---

[7]    The Court notes that National's April 28, 2020 reservation of rights letter did not become part of the Policy for the same reasons.  (*See* Docket No. 61-16).

to this point, Pennsylvania courts have also held that general "'[p]rinciples of contract law govern the interpretation and applicability of settlement agreements,'" *West v. Abington Mem'l Hosp.*, --- A.3d ----, 2025 PA Super 188 (Pa. Super. Ct. Aug. 28, 2025) (quoting *Prof'l Flooring Co., Inc. v. Bushar Corp.*, 152 A.3d 292, 299–300 (Pa. Super. Ct. 2016)), and, when "a written agreement contains an integration clause, 'the law declares the writing to be not only the best, but the only, evidence of their agreement.'" *Id.* (quoting *Yocca v. Pittsburgh Steelers Sports, Inc.*, 578 Pa. 479, 854 A.2d 425, 436 (2004)). Thus, evidence of potential terms which were the subject of preliminary negotiations, representations and other communications between the parties made prior to the execution of the contract are not incorporated into same. *See id.* (quoting *Yocca*, 854 A.2d at 436) ("'All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract and unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms and agreements cannot be added to nor subtracted from by parol evidence.'")).

The Settlement Agreement between National, the M.M. Plaintiffs, the District and Brimar contains the following integration clause at § IX:

> The Parties expressly agree that this Agreement constitutes their complete and entire agreement with respect to the subject matter hereof, and that any other promises, inducements, representations, warranties, or agreements with respect to the subject matter hereof have been superseded hereby and are not intended to survive this Agreement. No amendment or modification of this Agreement shall be effective unless set forth in writing and signed by a duly authorized officer of each Party.

(Docket No. 55-5 at § IX). In addition, the evidence of the parties' negotiations demonstrates that National proposed that language be added to the Settlement Agreement specifically stating that it retained the right to seek recoupment of the settlement payment from Brimar and the District, but that language did not become a part of the fully integrated agreement as the District's counsel

redlined and deleted it during negotiations and National proceeded to sign the Settlement Agreement without that language. (Docket Nos. 47-43 at 7-11; 55-3 at 2, 6-7; 47-44 at 3-4; 55-5).

Rather, the Settlement Agreement contains mutual reservation of rights language wherein National, Brimar and the District each preserved their respective rights in the federal coverage action and did not waive, admit or compromise any of their claims, positions, or defenses in that case. (Docket No. 55-5 at § V). In this Court's estimation, the reservation of rights language undoubtedly permitted National to bring the instant claim for unjust enrichment against the District, but it likewise authorized the District to seek summary judgment on the basis that such claim is not viable under Pennsylvania law because their relationship was formed pursuant to written contracts. *See Prof'l Flooring Co.*, 152 A.3d at 299-300 ("A court determines the effect of a release from its language, and we give language its ordinary meaning unless the parties clearly intended a different meaning. A release ordinarily covers only such matters as can fairly be said to have been within the contemplation of the parties when the release was given.").

Returning to the merits of National's unjust enrichment claim, the Court notes that National is the master of its Complaint and could have chosen to pursue other legal theories in an effort to recover the settlement payment but did not do so. *Cf. Wood v. Prudential Ins. Co. of Am.*, 207 F.3d 674, 678 (3d Cir. 2000) ("A plaintiff is […] considered the 'master of the complaint.'"). While National contends that the equities favor its position and cites a few non-binding cases in support, the Court must evaluate the sufficiency of its unjust enrichment claim in reference to the "bright line" rule of the "Commonwealth that the doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract, regardless of how harsh the provisions of such contracts may

seem in the light of subsequent happenings." *Wilson Area Sch. Dist.*, 586 Pa. at 520 (internal quotation omitted). Our Court of Appeals has commented that "[f]rom the breadth and force of that expression, it may well be that the Pennsylvania Supreme Court would disallow an unjust enrichment claim even when a contract governing the parties' relationship contains an unenforceable promise." *SodexoMAGIC, LLC*, 24 F.4th at 229. Following such precedent, Pennsylvania appellate courts have found that, like other contract principles, this "bright line" rule barring unjust enrichment claims applies to settlement agreements and that unjust enrichment claims relying on settlement agreements fail as a matter of law. *See Toppy v. Passage Bio, Inc.*, 285 A.3d 672, 688 (Pa. Super. Ct. 2022) ("Appellant's unjust enrichment claim avers the existence and terms of the settlement agreement. Because an unjust enrichment claim cannot stand when there is an express contract, and because Appellant's allegations of unjust enrichment are based on the terms of such a contract, we affirm the dismissal of the unjust enrichment claim."); *see also County Restorations, LLC v. Simone*, 258 A.3d 522, 2021 WL 2418694, at *5 (Pa. Super. Ct. 2021) ("We agree with the trial court that the relationship between the parties is clearly founded upon a written agreement, i.e., the Settlement Agreement and the doctrine of unjust enrichment is, therefore, inapplicable.").

Here, the undisputed evidence demonstrates that the settlement payment to the M.M. Plaintiffs which National is seeking to recover was plainly the subject of an enforceable Settlement Agreement between National, the M.M. Plaintiffs, Brimar and the District resolving the Allegheny County Action. (*See* Docket No. 55-5). The uncontested record establishes that Settlement Agreement was negotiated at arm's length between sophisticated counsel and resulted in, among other things:

- National paying the M.M. Plaintiffs $150,000.00;

- the M.M. Plaintiffs releasing any and all claims and potential claims against National, Brimar and the District;

- the District and Brimar dismissing their respective crossclaims against each other and mutually releasing any and all claims and potential claims that could have been raised against each other in that action; and,

- the dismissal of the Allegheny County Action, with prejudice.

(Docket No. 55-5).  The parties expressly agreed that the settlement was made "in consideration of the mutual promises and covenants contained [therein], and for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged" and that National's payment was made "[i]n consideration of the releases and other promises to it set forth" in the Settlement Agreement.  (*Id*. at 1-2).  As noted, the language proposed by National pertaining to reimbursement of the settlement payment was discussed among counsel but was not included in the Settlement Agreement.  Instead, the parties' negotiations resulted in a mutual reservation of rights preserving the respective positions of National, Brimar and the District in the coverage litigation.[8]  (Docket No. 55-5 at § V).

Neither of the parties have advocated that the Settlement Agreement is unenforceable, and it appears that their respective obligations under same have been satisfied.  Since there is a fully enforceable contract between the parties governing the settlement of the Allegheny County Action, there is no basis under Pennsylvania law for National to seek the quasi-contractual remedy of unjust enrichment to recoup its settlement payment from the District.  *See*

---

[8]    "'[C]ourts are not generally available to rewrite agreements or make up special provisions for parties who fail to anticipate foreseeable problems.'" *Wert v. Manorcare of Carlisle PA, LLC*, 633 Pa. 260, 278-79 (Pa. 2015) (quoting *In re Estate of Hall*, 517 Pa. 115, 535 A.2d 47, 56 n. 7 (Pa. 1987)).  Here, the parties were represented by sophisticated counsel who were well aware of the potential for this claim as the coverage litigation was not resolved and said matter would continue beyond the date of the settlement of the Allegheny County Action.  (*See* Docket No. 55-5).  Given same, counsel could have negotiated a provision to allocate the risk of loss pertaining to the settlement payment differently to account for the possibility that it may later be determined that National did not have the duty to defend or indemnify akin to the language set forth in the Defense Costs endorsement.  (*See* Docket No. 47-2 at 44).  They did not do so and National cannot now invoke an equitable theory of unjust enrichment to upend this freely bargained-for contract.

*SodexoMAGIC, LLC*, 24 F.4th at 229 ("with a fully enforceable contract governing the parties' relationship, the quasi-contractual remedy of unjust enrichment is unavailable.").

National's unjust enrichment claim suffers from additional deficiencies because it has failed to show that the District's retention of the benefit it gained from the settlement payment to the M.M. Plaintiffs would be inequitable under the unique facts and circumstances of this case. National admits that "[t]he settlement benefited all parties," (Docket No. 69 at 4), but "the Pennsylvania Supreme Court has rejected a claim of unjust enrichment when a benefit that a party confers upon another also protects its own interest." *SodexoMAGIC, LLC*, 24 F.4th at 229 (citing *Jerry's Sport*, 2 A.3d at 546). The Court agrees that National benefited from the settlement in several ways including that: the M.M. Plaintiffs provided National with a full release of any potential claims against it; National avoided the risk posed by an excess verdict against its insureds; and National cut off the growing defense costs for both insureds for which it may have been responsible. *See Jerry's Sport*, 2 A. 3d. at 545-46. National also protected itself from any bad faith claims from its insureds. *See id.* In addition, the Court finds that National simply cannot show that the circumstances are inequitable when it obtained exactly what it bargained for under the agreements, including the reimbursement of defense costs discussed above. *Cf. McMullen v. Kutz*, 603 Pa. 602, 617, 985 A.2d 769, 778 (Pa. 2009) ("freely negotiated agreements entered into at arm's length are generally enforced according to their terms to allow parties the benefit of their bargains.").

The Court must also look at the equities from the perspective of the District. *See Meyer, Darragh,* 645 Pa. 362 at 378. Here, as part of the settlement, the District gave up its immunity defense to the M.M. Plaintiffs' claims and released its crossclaims against National's primary insured, Brimar, avoiding further litigation and defense costs that National may have had to incur

defending Brimar. (Docket No. 55-5). As the District points out, its indemnification claim was based on broad contractual language requiring Brimar to indemnify it "against any and all loss, damage, cost and expenses which the [District] may hereafter suffer or incur arising from [Brimar's] obligations under" their student transportation services agreement. (Docket No. 47-1 at ¶ 8). Given the settlement, it appears that it would be unfair to allocate the whole settlement payment to the District where Brimar's employees were more directly involved in the activities leading to the harm to the minor plaintiff in the underlying tort action. *Cf. Cont'l Cas. Co. v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, App. No. 22-1087, 2022 WL 17101226, at *3 (3d Cir. Nov. 22, 2022) (citing *Builders Supply Co. v. McCabe*, 77 A.2d 368, 370 (Pa. 1951)) ("Pennsylvania law has long recognized a vicariously liable principal's right to indemnity from its tortfeasor-agent.")). The District's release of claims against Brimar would also leave the District without any recourse against Brimar if it was ordered to reimburse National for all or part of the settlement payment at this stage. (*See* Docket No. 55-5). Taken together, the particular facts and circumstances of this case are such that National has failed to demonstrate that the District's retention of the benefit from the settlement payment to the M.M. Plaintiffs would be inequitable. *See Meyer, Darragh,* 645 Pa. 362 at 378.

Although no further discussion is necessary, the Court also finds that the cases relied upon by National in support of its equitable claim for unjust enrichment are non-binding and distinguishable. (*See* Docket Nos. 49; 62; 65; 69). As is discussed below, none of these cases analyzed the "bright line" rule precluding unjust enrichment claims when the parties' relationship was based on a contract and the resolution of the underlying matter was the result of a comprehensive settlement agreement between the insurer, the insureds and the plaintiffs in the underlying action.

For example, in *Essex Ins. Co. v. RMJC, Inc.*, a panel of the Third Circuit held in a non-precedential opinion that Essex could recover a state court judgment that it paid on behalf of its insured after the District Court's determination that it had a duty to defend was overturned on appeal. 306 F. App'x 749 (3d Cir. 2009). The panel expressly distinguished other cases which involved settlements, separating it from the instant matter as well. *Id.*

Next, in *Am. W. Home Ins. Co. v. Donnelly Distribution, Inc.*, the Court surveyed a number of cases, including *Essex*, and granted summary judgment in favor of the insurer seeking to recover a settlement payment from its insured after the Third Circuit reversed a lower court's determination that the insurer had a duty to defend. Civ. A. No. A. 14-797, 2015 WL 505407, at *3 (E.D. Pa. Feb. 6, 2015) (Schiller, J.). But, the Court did not address the defense raised by the District here that the claim was barred by the contract between the parties and noted that both parties in *Donnelly* had disavowed drafting the release signed by the underlying plaintiff. *Id.* It also appears that there was no further appellate review of the *Donnelly* case as it was settled while on appeal. *See, Donnelly Dist., Inc. v. Am. W. Home Ins. Co.*, App. No. 15-1587 (3d Cir. Apr. 1, 2015).

Similarly, in *Ironshore Specialty Ins. Co. v. Conemaugh Health Sys., Inc.*, the Court denied summary judgment and ordered that an excess insurer's unjust enrichment claim seeking recoupment from the insured could be presented at trial but did not examine whether a settlement agreement precluded the claim. Civ. A. No. 3:18-CV-153, 2022 WL 1540574, at *23 (W.D. Pa. May 16, 2022) (Gibson, J.). The *Ironshore* case was settled prior to trial. *See* Civ. A. No. 3:18-cv-153, Docket No. 274 (W.D. Pa. Sept. 20, 2022).

Finally, two additional cases cited by the parties do not help National's cause as both courts found that the unjust enrichment claims were insufficient as a matter of law and the

insureds were not unjustly enriched by the settlement payments to third parties.  *See Axis Specialty Ins. Co. v. Brickman Grp. LTD, LLC*, 756 F. Supp. 2d 644, 656 (E.D. Pa. 2010), *aff'd sub nom. Axis Specialty Ins. Co. v. Brickman Grp. Ltd., LLC*, 458 F. App'x 220 (3d Cir. 2012); *see also Utica Mut. Ins. Co. v. Rohm & Haas Co.*, 683 F. Supp. 2d 368, 376 (E.D. Pa. 2010). The Court finds that the following passage used in both cases is applicable here:

> When an insurer funds a settlement, the insurer benefits because settlement ... caps the insurer's risk of liability, and may insulate an insurer from a future bad faith claim by the insured. If courts added to this list of benefits for the insurer by actively grafting on to the insurer-insured relationship an implied right to reimbursement for settlement payments in this situation, an insured would be left without any commercially reasonable choices. The insured would be forced to either accept the insurer's unilateral conditions on funding the settlement, fund the settlement itself, or forego settlement altogether thereby risking loss of a potential reasonable settlement within policy limits.

*Axis Specialty Ins. Co.*, 756 F. Supp. 2d at 656 (quoting *Utica*, 683 F. Supp. 2d at 376).  All told, these cases lend further support to the Court's conclusion that National has failed to demonstrate that the District was unjustly enriched by the settlement payment.  *See id.*

For all of these reasons, the parties' cross motions for summary judgment on the unjust enrichment claim are resolved in the District's favor.

V.    CONCLUSION

Based on the foregoing, the parties' cross motions for summary judgment are granted, in part and denied, in part.  After applying well established Pennsylvania law to the facts of this diversity action, the Court finds that the Defense Costs endorsement to the Policy clearly and unambiguously entitles National to recover the $338,146.86 in defense costs that it paid to the District prior to the Third Circuit's ruling that it did not owe a duty to defend or indemnify the District.  *See Jerry's Sport*, 606 Pa. at 589.  However, the Court also concludes that National

failed to prove that it is entitled to reimbursement of the settlement payment it made to the M.M. Plaintiffs under an unjust enrichment theory because the relationship between National and the District is based on enforceable contracts, including the Policy and Settlement Agreement.  *See SodexoMAGIC,* 24 F.4th at 228-29.  Pennsylvania law bars unjust enrichment claims based on freely negotiated contracts "'regardless of how harsh the provisions of such contracts may seem in the light of subsequent happenings,'" *SodexoMAGIC*, 24 F.4th at 228-29 (quoting *Wilson Area Sch. Dist.*, 895 A.2d at 1254), which would necessarily include the subsequent determination by the Third Circuit that National did not have a duty to defend or indemnify its insureds in the Allegheny County Action.

Accordingly, the Court will enter summary judgment in favor of National on the breach of contract claim and in favor of the District on the unjust enrichment claim.  An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

Dated:  October 27, 2025

cc/ecf:  All counsel of record.