IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATIONAL LIABILITY & FIRE INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Judge Nora Barry Fischer<br>) Civil Action No. 24-453 |
| BRIMAR TRANSIT, INC., PITTSBURGH PUBLIC SCHOOL DISTRICT, | )<br>)<br>) |
| Defendants. | ) |

**MEMORANDUM OPINION**

I.  INTRODUCTION

In this insurance coverage reimbursement action, Plaintiff National Liability & Fire Insurance Company ("National") brings claims for breach of contract and unjust enrichment against Defendants Brimar Transit, Inc. ("Brimar") and the Pittsburgh Public School District, (the "District") seeking to recover a $150,000 settlement payment it made to the M.M. Plaintiffs to resolve the underlying action styled *M.M., parent and natural guardian of K.M., a minor v. Pittsburgh Public School District and Brimar Transit, Inc.*, Case No. GD-18-003257, ("Allegheny County Action"), in the Court of Common Pleas of Allegheny County as well as defense costs it paid on behalf of Defendants. (Docket No. 1). On October 27, 2025, the Court issued a Memorandum Opinion and Order resolving cross-motions for summary judgment regarding National's claims against the District, holding that National was entitled to contractual reimbursement of $338,146.86 in defense costs from the District on its breach of contract claim but that summary judgment would be entered in favor of the District as to National's unjust

enrichment claims seeking to recover the settlement payment. (Docket Nos. 71; 72). The Court's decision is fully incorporated herein.[1]

As to National's remaining claims against Brimar, the Clerk of Court entered default against Brimar on September 4, 2024 given its failure to answer or otherwise respond to the Complaint. (Docket No. 27). Presently before the Court are National's Motion for Default Judgment, a declaration from counsel, attached exhibits and a brief in support requesting a default judgment against Brimar in the amounts of $86,981.09 for defense costs paid on its behalf to defend the Allegheny County Action and the $150,000 settlement payment made to the M.M. Plaintiffs. (Docket Nos. 73; 74). National argues that the Court should follow its prior ruling and award reimbursement of the defense costs it paid on behalf of Brimar but asks the Court to disregard the decision and award it the settlement payment against Brimar. (Docket No. 74). On the latter point, National asserts that the Court allegedly failed to follow binding precedent and wrongly denied its motion for summary judgment as to the settlement payment and the unjust enrichment claim. (*Id.*). National filed proof of service indicating that its Motion, supporting papers and the Court's Order directing Brimar to file a Response by December 1, 2025 were duly served on Brimar's representative. (Docket No. 75). Yet, no filings have been made through the date of this Memorandum Opinion and Order. (Docket No. 76).

After careful consideration of the submissions in light of the Court's prior rulings, (Docket Nos. 27; 71), and for the following reasons, National's Motion [73] will be granted, in part, and denied, in part. Consistent with the October 27, 2025 Memorandum Opinion, (Docket No. 71),

---

[1] The Court notes that National did not timely seek reconsideration of the October 27, 2025 Memorandum Opinion and Order within seven days under the Court's Practices and Procedures or within 28 days under Rule 59(e) of the Federal Rules of Civil Procedure. *See Practices and Procedures of Judge Nora Barry Fischer* at II.M. (eff. 2/16/22); *see also* Fed. R. Civ. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of judgment").

the Court grants National's Motion to the extent that it seeks to recover $86,981.09 in defense costs from Brimar but denies National's Motion insofar as it asks to be reimbursed for the settlement payment under an unjust enrichment theory.

II.     LEGAL STANDARDS

Given the detailed recitation of the facts in the October 27, 2025 Memorandum Opinion, which have been incorporated herein, the Court initially turns to the relevant legal standards. (*See* Docket No. 71). Federal Rule of Civil Procedure 55(a) provides, "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). If a plaintiff seeks relief other than a "sum certain" in damages, the plaintiff "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b).

"[T]he entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984); *see also Thornton v. West*, 529 F. App'x 107, 110 (3d Cir. June 17, 2013). Upon the Clerk's entry of default, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990); *Murphy v. Ability Recovery Servs., LLC*, 2019 WL 7708592, at *1 (W.D. Pa. Aug. 7, 2019). That said, "the Court need not accept the moving party's legal conclusions[.]" *Bower v. NRA Grp., LLC*, 2019 WL 3306515, at *2 (W.D. Pa. July 22, 2019) (internal quotation marks and citation omitted). Therefore, "the Court must decide whether the unchallenged facts constitute a legitimate cause of action," before entering a default judgment against the defendant. *Murphy*, 2019 WL 7708592, at *1 (internal quotation marks and citation omitted). Once the Court determines that the plaintiff has plausibly alleged a valid cause of action, the Court must consider three factors when deciding whether to

grant default judgment: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).

Under Federal Rule of Civil Procedure 55, the Court "may conduct hearings" when it needs to "determine the amount of damages" to enter or effectuate a default judgment. Fed. R. Civ. P. 55(b)(2)(B). "Rule 55(b)(2)'s language regarding hearings is permissive." *Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 271 (E.D. Pa. 2014). As numerous courts have held, if the Court can determine the amount of damages to be awarded based on affidavits or other evidentiary materials, "[t]he Court is under no requirement to conduct an evidentiary hearing with testimony." *E. Elec. Corp. of N.J. v. Shoemaker Constr. Co.*, 657 F. Supp. 2d 545, 552 (E.D. Pa. 2009); *see Rainey v. Diamond State Port Corp.*, 354 Fed. App'x. 722, 724 (3d Cir. 2009) ("If it is necessary to determine the amount of damages or to establish the truth of any averment by evidence, the court *may* conduct a hearing.") (emphasis added and internal quotation marks and citation omitted). The Court, in its discretion, does not believe that a hearing is warranted to resolve this matter.

III.    DISCUSSION

In Count I of its Complaint, National seeks reimbursement of $86,981.09 in defense costs for its defense of Brimar in the Allegheny County Action under alternative theories of breach of contract and unjust enrichment. (Docket No. 1). National also brings a claim against Brimar for unjust enrichment at Count II of its Complaint for recovery of the $150,000 settlement payment. (*Id.*). National now argues that default judgment should be entered in its favor on both counts because Brimar was properly served but has not participated in this action and National is legally entitled to the relief requested. (Docket No. 74 at 6-7).

The Court examines the first step in the default judgment analysis, i.e., whether "the unchallenged facts" put forward by the Plaintiff "constitute a legitimate cause of action." *Murphy*, 2019 WL 7708592, at *1 (internal quotation marks and citation omitted). Taking the uncontested allegations in National's Complaint as true, and consistent with the August 7, 2024 Memorandum Order denying the District's motion to dismiss, the Court finds that National has stated plausible claims for relief for breach of contract and unjust enrichment against Brimar at Counts I and II. (*Cf.* Docket No. 20 at 2 (citations omitted) ("National has pled sufficient facts to state plausible claims for relief against the District at Counts III and IV of its Complaint seeking contractual recoupment of defense costs and recovery of the settlement payment for the underlying litigation under a theory of unjust enrichment."). With that said, the Court further notes in the same Memorandum Order that a fact-intensive inquiry was necessary to determine the legal sufficiency of the claims and adds at this stage that the Settlement Agreement executed by the parties resolving the Allegheny County Action was not attached to the Complaint. (*See* Docket Nos. 1; 27; 71). Thus, the Court moves on to evaluate the factors noted in *Chamberlain*, including prejudice to National, culpable conduct by Brimar and whether there are any litigable defenses that would preclude the default judgment. *See Chamberlain*, 210 F.3d at 164.

In this Court's estimation, National has sufficiently established two of the factors as Brimar's delays in this case are due to its own culpable conduct and National will be prejudiced if default judgment is denied at this time. *See Chamberlain*, 210 F.3d at 164. To that end, Brimar's former counsel was granted leave to withdraw in the prior lawsuit at Civil A. No. 18-1129 in April of 2024 after the Court received uncontested reports that Brimar's sole owner passed away in April of 2022 at a time when the company was in the process of ceasing operations, the business had not been operational since his death, his son/executor of the estate had instructed counsel to withdraw

5

and ceased paying counsel's fees. (*See* Civ. A. No. 18-1129, Docket No. 192 at 4-6). The son/executor was well aware of the prior lawsuit and this reimbursement dispute as he participated in a settlement conference in February of 2024 and was served with process for the instant matter but declined to engage new counsel to represent Brimar. (*See id.*). Therefore, the Court finds that National will certainly be prejudiced by any further delays in resolving this lawsuit caused by Brimar's decision to not participate. *See Cyprus Mines Corp. v. M & R Indus., Inc.*, 2015 WL 1469529, *8 (D.N.J. Mar. 30, 2015) ("A plaintiff will be prejudiced absent a default judgment where, due to the defendant's continued failure to respond to plaintiff's claims, the plaintiff is left with no other recourse.").

The final factor, whether Brimar has any litigable defenses, requires some further discussion such that the Court separately evaluates the breach of contract and unjust enrichment claims, in turn. *See Chamberlain*, 210 F.3d at 164.

The Court agrees with National that it is entitled to contractual reimbursement of the defense costs from Brimar based on the plain language of the Policy, the Court's interpretation of same in the October 27, 2025 Memorandum Opinion and the straightforward application of the uncontested facts to same. (Docket No. 71 at 26-31) (citations omitted). The relevant provision of the Policy is the following:

> If we initially defend an insured or pay for an insured's defense but later determine that none of the claims, for which we provided a defense or defense costs, are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred.
>
> The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense or the payment of defense costs and to seek reimbursement for defense costs.

(Docket No. 47-2 at 44) (internal parentheticals and identifiers omitted). Here, it is undisputed that National appointed counsel to defend Brimar, simultaneously sent it a reservation of rights letter reserving the right to seek contractual reimbursement under the Policy, paid the defense costs directly to appointed counsel, and the Court of Appeals subsequently held that it had no duty to defend or indemnify Brimar under the Policy. (Docket Nos. 1; 74-1, Ex. "C"). Given same, National is eligible for reimbursement under the first sentence of the provision, the second sentence does not operate to limit recovery and there are no litigable defenses to National's breach of contract claim against Brimar as its refusal to reimburse National for the defense costs is in clear breach of the Policy. (*See* Docket No. 71 at 26-31). National is also seeking reimbursement of $86,981.09 in defense costs which is a "sum certain" specifically pled in its Complaint and counsel has confirmed the accuracy of this amount in a declaration. *See* Fed. R. Civ. P. 55(b); Docket Nos. 1 at ¶¶ 42, 54; 74-1 at ¶ 7). Accordingly, as the relevant factors support the request for a default judgment, the Court grants National's motion for default judgment as to Count I in the requested amount of $86,981.09.[2]

However, consistent with the October 27, 2025 Memorandum Opinion, the Court finds that Brimar has a litigable defense to the unjust enrichment claim seeking to recover the settlement payment as National and Brimar are parties to two enforceable contracts precluding the claim, i.e., the Policy and the Settlement Agreement. (*See* Docket No. 71 at 32-45). In support of its Motion for default judgment, National raises the same arguments that it did previously and once again relies heavily on its December 4, 2020 reservation of rights letter in support of its unjust enrichment claim against Brimar. (Docket No. 74). National further asserts that the Court erred in granting summary judgment in favor of the District on the unjust enrichment claim and allegedly

---

[2] In light of this ruling, the Court declines to evaluate whether recovery of the defense costs would be available under the alternative theory of unjust enrichment.

failed to follow "binding" authority from the Third Circuit Court of Appeals. (Docket No. 74). The Court disagrees with National and holds that the unjust enrichment claim against Brimar fails as a matter of law for the same reasons previously expressed. (*See* Docket No. 71 at 32-45).

As is more fully discussed in the prior decision, the Policy is silent regarding the potential reimbursement by the insurer for settlement payments in the event that it was determined that the claims were not covered by the Policy and "[t]he Pennsylvania Supreme Court has recognized that '[a] reservation of rights letter asserts defenses and exclusions that are already set forth in the policy' such that an insurer 'cannot employ a reservation of rights letter to reserve a right it does not have pursuant to the contract.'" (Docket No. 74 at 37 (quoting *American and Foreign Ins. Co. v. Jerry's Sport Center*, 606 Pa. 584, 614 (2010)). The Court further pointed out that the Settlement Agreement between National, Brimar, the District and the M.M. Plaintiffs contained an integration clause which prevented the reservation of rights letter from becoming part of same and that the general reservation of rights language within the Policy did not preclude the District from relying on the "bright-line" rule of Pennsylvania law that an unjust enrichment claim is barred when the parties had an express contract, as is the case here. (Docket No. 71 at 37-40 (quoting *West v. Abington Mem'l Hosp.*, --- A.3d ----, 2025 PA Super 188 (Pa. Super. Ct. Aug. 28, 2025)). The evidence of the negotiations of the Settlement Agreement also showed that National attempted to include language permitting it to recoup the settlement payment within the Settlement Agreement but that language was deleted during the parties' negotiations. (*Id.*).

The Court added that National had admitted that the settlement benefited all parties but "'the Pennsylvania Supreme Court has rejected a claim of unjust enrichment when a benefit that a party confers upon another also protects its own interest.'" (Docket No. 71 at 42 (quoting *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 229 (3d Cir. 2022), which cited *Jerry's Sport*,

2 A.3d at 546)). The Court thereafter listed the benefits of this particular settlement to National, which are incorporated herein. (Docket No. 71 at 42). Therefore, as the Court held with respect to the claim against the District, National cannot invoke an unjust enrichment theory to recover the settlement payment against Brimar. *See id.*

Finally, the Court rejects National's assertion that the Court failed to follow binding authority from the U.S. Court of Appeals for the Third Circuit in granting summary judgment in favor of the District on the unjust enrichment claim. (*See* Docket No. 74 at 11, n.1 ("This Court failed to follow binding Third Circuit precedent which is directly on point and dispositive of National's right to reimbursement" and "*Essex is directly on point and dispositive of National's right to reimbursement*.")). To the contrary, the Court concluded the discussion of the Memorandum Opinion distinguishing the non-binding cases that National had cited throughout its briefing and those are the same cases relied upon here. (*Compare* Docket No. 71 at 43-45 *with* Docket No. 74 at 14-15). To reiterate, *Essex Ins. Co. v. RMJC, Inc.*, 306 F. App'x 749 (3d Cir. 2009) is a non-precedential opinion issued by a panel of Third Circuit Judges and is not binding on this Court. *See e.g., United States v. James*, 928 F.3d 247, 255 (3d Cir. 2019) ("It is contrary to our Internal Operating Procedures, however, to treat non-precedential opinions as having any precedential effect."); Third Circuit Internal Operating Procedure 5.7 (2023) ("The court by tradition does not cite to its not precedential opinions as authority. Such opinions are not regarded as precedents that bind the court because they do not circulate to the full court before filing."). *Essex* was also issued before the Pennsylvania Supreme Court's 2010 decision in *Jerry's Sport* such that the panel's non-binding predictions as to how the Pennsylvania Supreme Court would decide the issues presented were made without the guidance of that decision, further undermining its persuasive authority. *See Jerry's Sport Ctr., Inc.*, 606 Pa. 584. Hence, this Court was simply

9

not bound to follow the *Essex* decision and otherwise fully explained why that case (and the others cited by National) were otherwise distinguishable given the unique facts and circumstances of this case. (*See* Docket No. 71 at 43-45).

All told, since Brimar has litigable defenses to the unjust enrichment claim for the reasons noted above and previously detailed in the October 27, 2025 Memorandum Opinion, (*see* Docket No. 71), the Court declines to exercise its discretion to enter default judgment in favor of National and against Brimar on the unjust enrichment claim.

IV.   CONCLUSION

Based on the foregoing, National's Motion for Default Judgment [73] is granted, in part and denied, in part. An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

Date:   December 12, 2025

cc/ecf:  All counsel of record.

cc:   Brimar Transit, Inc.
      c/o Miguel M. Nesbeth as Executor of the
      Estate of Marciano Nesbeth, Sr.
      14915 Summer Knoll Lane,
      Houston, TX 77044
      (via first class mail)